# CHRIS DANIEL
## HARRIS COUNTY DISTRICT CLERK

**DATE: January 16, 2015**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
1/16/2015 4:32:17 PM
CHRISTOPHER A. PRINE
Clerk

NOTICE OF APPEALS
ASSIGNMENT OF COURT THE COURT OF APPEALS

**TO:**     **14TH  COURT OF APPEALS**

**From:**     **Deputy Clerk: PHYLLIS WASHINGTON**
Chris Daniel, District Clerk
Harris County, T E X A S

**CAUSE:**     **2012-64035**

**VOLUME _____ PAGE _____ OR     IMAGE # 62811472**

**DUE:  02-16-15**          **ATTORNEY TBN #24025568**

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE  14TH COURT OF APPEALS**

**DATE ORDER SIGNED:     10-17-14**

**MOTION FOR NEW TRIAL**/REQUEST FOR FINDINGS OF FACT **DATE FILED:  11-17-14**

**REQUEST TRANSCRIPT DATE FILED     NO REQUEST– RULE 34.5**

**NOTICE OF APPEAL DATE FILED     01-14-15**

**NUMBER OF DAYS: ( CLERKS RECORD )  120- Post-Trial Motion filed**

**FILE ORDERED:  YES ☐   NO ☒  IMAGED FILED:  YES ☒  NO ☐**

**CODES FOR NOTICE OF APPEAL:  BC, C, OA**

CHRIS DANIEL
Harris County, District Clerk

By:   /s/PHYLLIS WASHINGTON
**PHYLLIS WASHINGTON, Deputy**

BC      NOTICE OF APPEAL FILED
BG       NOTICE OF APPEAL FILED – GOVERNMENT
C       JUDGMENT BEING APPEALED
D -      ACCELERATED APPEAL
OA       NO CLERK'S RECORD REQUEST FILED
O       CLERK'S RECORD REQUEST FILED (W/NOTICE OF APPEAL)
NA       AMENDED NOTICE OF APPEAL

CAUSE NO. 2012-64035

| | | |
|---|---|---|
| B. MAHLER INTERESTS, L.P., PLAINTIFF | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| DMAC CONSTRUCTION, INC. DEFENDANT. | § § § | 152ND JUDICIAL DISTRICT |

## NOTICE OF APPEAL

B. MAHLER INTERESTS, L.P., ("Appellant") files this its Notice of Appeal giving notice

of his desire to appeal this Court's final summary judgment dated October 17, 2014 entitled **FINAL**

**SUMMARY JUDGMENT** to either the First or the Fourteenth Court of Appeals.

Respectfully submitted,

CHRISTOPHER D. NUNNALLEE
TSB 24025568
1413 Brittmoore Road, Suite 103
Houston, Texas 77043-4005
Telephone: 713-787-5333
Facsimile: 713-787-5334

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I do hereby certify that on this 14th of January, 2015, the above Notice of Appeal was served as indicated to the following counsel of record in accordance with Rule 21a of the Texas Rules of Civil Procedure:

**JAMES A. SCHUELKE**
State Bar No. 24075037
1100 Louisiana Street, Suite 3500
Houston, Texas 77002
Telephone: 713-485-7200
ATTORNEY FOR DEFENDANT,
**DMAC CONSTRUCTION, INC.**

*VIA FACSIMILE TO 713-485-7250*

CHRISTOPHER D. NUNNALLEE

7/18/2014 6:29:45 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 1880962
By: SMITH, SALENE

## CAUSE NO. 2012-64035

| | | |
|---|---|---|
| **B. MAHLER INTERESTS, L.P.** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| **DMAC CONSTRUCTION, INC.** | § | |
| | § | **152ND JUDICIAL DISTRICT** |
| *Defendant* | § | |
| | § | |

## FINAL SUMMARY JUDGMENT

On the 8th day of August 2014, came on for hearing Defendant's Amended Traditional and No-Evidence Motion for Summary Judgment, and the Court, having considered the Motion, Plaintiff's Response, Defendant's Reply, and the argument of counsel, ORDERS that Defendant's Amended Traditional and No-Evidence Motion for Summary Judgment should be and hereby is GRANTED.

The Court therefore RENDERS JUDGMENT for Defendant, DMAC Construction, Inc.

The Court ORDERS that Plaintiff take nothing on its claims against DMAC Construction, Inc. and that DMAC Construction, Inc. recover all court costs from Plaintiff.

This judgment finally disposes of all claims and all parties, and is appealable.

The Court ORDERS execution to issue for this judgment.

**OCT 1 7 2014**

SIGNED and ORDERED this ____ ~~day of August, 2014~~.

_____
Judge Presiding

4827-6643-9963, v. 2

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging



CAUSE NO. 2012-64035

| | | |
|---|---|---|
| B. MAHLER INTERESTS, L.P. | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| DMAC CONSTRUCTION, INC. | § | |
| | § | |
| *Defendant.* | § | 152ND  JUDICIAL DISTRICT |

## PLAINTIFF'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff B. MAHLER INTERESTS, L.P. ("Mahler"), by and through her undersigned counsel, file this its MOTION FOR NEW TRIAL and, for its motion, would respectfully show this Court that this case is jury worthy1 for the following reasons; to-wit:

### I.    INTRODUCTION

1.    On August 8, 2014, this Court considered Defendant DMAC's Amended Motion for Traditional and No-Evidence Motion for Summary Judgment.  During the oral hearing, this Court orally rendered judgment DENYING Defendant DMAC's no-evidence motion for summary judgment.

2.    The day before the oral hearing, on August 7, 2014, DMAC filed its Reply to Plaintiff's Response to DMAC's Amended Motion for Summary Judgment.  In the Reply, DMAC asserts new grounds for summary judgment not previously asserted in its motion.  Specifically, DMAC asserted a provision in the parties' contract as a waiver of Plaintiff's right to  assert the

---

1On August 8, 2014, at the oral hearing on the Motion, this Court denied DMAC's no-evidence motion for summary judgment.  Accordingly, this motion for new trial is primarily directed to DMAC's traditional motion for summary judgment.

discovery rule as a counter-affirmative defense to DMAC's pleading of the affirmative defense of the statute of limitations.

3. On October 17, 2014, the Court signed an order granting Defendant DMAC's Amended Motion for Summary Judgment. Based on this Court's prior ruling at the hearing, it is clear that by signing the proposed order it was granting DMAC's traditional motion for summary judgment on the basis of the newly asserted grounds in the Reply that Plaintiff had waived the right to assert the discovery rule in the parties' contract.

4. DMAC did not move for summary judgment on Mahler's claim of fraudulent concealment as it relates to the porch roofs.

5. Mahler has filed this Motion within thirty days of this Court's order, which extends Mahler's deadline to notice an appeal and this Court's plenary power to on or before January 16, 2014.

6. This Motion has not yet been set for oral hearing.

## II. STANDARD OF REVIEW

7. If this Court does not grant a new trial, Mahler's only option will be to appeal. On appeal, the trial court's summary judgment will be reviewed de novo. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When reviewing error under a de novo standard, the appellate court conducts an independent analysis of the record to arrive at its own legal conclusions, does not defer to the trial court's conclusions, and may substitute its conclusions for those made by the trial court. *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

8. In reviewing the grant of a summary judgment, all evidence favorable to Mahler must be taken as true and all reasonable inferences, including any doubts, must be resolved in Mahler's favor. *See Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Sci. Spectrum,*

*Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Under Texas Rule of Civil Procedure 166a(c), DMAC bore the burden to show that no genuine issue of material fact exists and that it was entitled to judgment as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Here, after DMAC moved for summary judgment on its statute-of-limitations defense, it had to (1) conclusively prove when the cause of action accrued, and (2) conclusively negate the discovery rule and fraudulent concealment as a matter of law. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 224. DMAC did neither.

## III. DMAC FAILED TO ASSERT ITS "GROUNDS" IN THE MOTION

9.     As asserted in Mahler's Response, DMAC failed to assert all summary judgment grounds in its motion. DMAC moved for a traditional motion for summary judgment on the affirmative defense of the statute of limitations. In that connection, DMAC had the burden to (1) conclusively prove when the cause of action accrued, and (2) conclusively negate the discovery rule and fraudulent concealment as a matter of law. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 224. On August 7, 2014, the day before the summary judgment hearing, DMAC filed a Reply and, for the first time, asserted that "the parties' contract eliminates the discovery rule's application to any claims between the parties by stating that 'any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment.'" *See* Reply at §3, page 6.

10.     A motion for summary judgment must state specific grounds. TEX. R. CIV. P. 166a(c) (Vernon's Supp. 2014). Although DMAC asserts waiver of the discovery rule in the Reply, DMAC's ability to use its Reply to provide the requisite specificity is procedurally defective. Allowing the specificity to be satisfied by DMAC's reply allows a movant to avoid complying with the specificity requirement until the day before the summary judgment hearing or later. See Justice

- 3 -

Michol O'Connor, O'Connor's Texas Rules: Civil Trials 2000 §6.1 (2000) (noting that rule 166a does not contain a deadline for a movant to file a reply to a non-movant's response). Furthermore, allowing the Reply to provide the requisite specificity would be in violation of the Texas Supreme Court's insistence that a motion for summary judgment must "stand or fall on the grounds expressly presented in the motion." See *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (motion that fails to present grounds is legally insufficient as a matter of law); see also *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 2000 WL 675127, at *5 (Tex. App.---Houston [14th Dist.] May 25, 2000, no pet. h.) (challenges must be presented in motion). Rule 166a(c) requires that the motion for summary judgment state the specific grounds therefor in order to provide adequate information for opposing the motion, and to define the issues. *See* Weaver v. Stewart, 825 S.W.2d 183, 184-85 (Tex.App.--Houston [14th Dist.] 1992, writ denied) ("[Rule 166a(c) ] is important because it provides the opposing party with notice of all matters expected to be asserted in arguing the motion."). As a result, Mahler's counsel was not afforded the standard fourteen days to address that issue or the opportunity to argue the issue to the Court. As a result, DMAC has waived the issue.

## IV.    DMAC FAILED TO CONCLUSIVELY NEGATE THE DISCOVERY RULE

11.    Summary judgment should have been denied and this Court should grant a new trial because (1) paragraph 13.7 of the parties' contract violates Texas public policy under the facts and circumstances in this case, and (2) the parties' contract was not negotiated between sophisticated parties represented by counsel and there is evidence of willful and fraudulent conduct by DMAC rendering the foreign case law cited by DMAC unpersuasive and inapplicable.

12.    DMAC principally relies on the California appellate case of *Brisbane Lodging* for the proposition that 13.7 of the parties' contract abrogates the applicability of the discovery rule as a

matter of law. Neither party could cite this Court to even one Texas case on that issue. See Motion, Response and Reply. As this Court knows, the case law cited by DMAC is merely persuasive authority and not binding on this Court.

13. DMAC could only cite to five additional states that similarly enforced paragraph 13.7 of the Contract including Kentucky, Maryland, Massachusetts, New York and Pennsylvania. See Reply at 6-7. Notably, in every instance the suit was between an architect and some other sophisticated business entity. In fact, in *Brisbane Lodging*, the one case tersely briefed by DMAC, the court specifically pointed out a common thread among the jurisdictions that have enforced such accrual clauses

> Although we are not bound to follow these out-of-state authorities, they reflect a broad consensus as to the proper interpretation of the AIA's standard agreement's accrual provision under circumstances identical to the circumstances present in this case; that is, where the provision was **freely entered into by parties represented by legal counsel** engaged in a **sophisticated** commercial construction project.

*Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 216 Cal. App. 4th 1249, 1260 (Cal. Ct. App. 2013) (emphasis added). The trial court in *Brisbane Lodging* also emphasized the sophistication of the parties noting, "that the agreement was one between sophisticated parties seeking to define the contours of their liability." *Id.* at 1253.

14. In *Brisbane Lodging*, on July 12, 1999, Brisbane and Webcor entered into a contract for the design and construction of a 210-room, eight-story hotel, which was named the Sierra Pointe Radisson Hotel. *Brisbane Lodging*, 216 Cal. App. 4th at 1254. The Brisbane Lodging court noted that, "[b]efore execution, the agreement had been extensively negotiated between the parties." Five months before the parties' executed the written contract, on March 8, 1999, Brisbane wrote to Webcor: "It is understood and agreed that negotiation of contract documents and satisfaction of customary closing conditions and due diligence must be satisfactory in form and substance to the

- 5 -

parties and their respective counsel." *Id.* Both parties made revisions to the drafts of the contract by striking out unacceptable provisions and inserting additional terms. *Id.* Brisbane approved the form of the agreement with "mutually acceptable language." *Id.*

15. The reasoning of these out-of-state cases rests on the principle of "protecting individuals efforts to structure their own affairs," or, the freedom to contract, but in *Brisbane Lodging* the court the case of *Harbor Court Associates*, a Maryland case out of the Fourth Circuit, as aptly demonstrating that reasoning when that court emphasized it would allow parties to contract around the discovery rule "where, as here, the parties to the agreement are *sophisticated business actors who sought, by contract, to allocate business risks in advance.*" *Brisbane Lodging*, 216 Cal. App. 4th at 1260 (citing *Harbor Court Associates v. Leo A. Daly Co.*, 179 F.3d 147, 150-151 (4th Cir. 1999)). In citing to other legal authorities in California in support of the public policy to allow parties to define a limitations accrual date or otherwise modify the applicable statute of limitations, the *Brisbane Lodging* court noted "[p]arties represented by counsel have even been allowed to waive the protection of Civil Code section 1542, thereby giving up the right to bring suit on unknown and unsuspected claims at the time the contract is executed." *Id.* at 1263. In disagreeing with Brisbane's position that public policy supports a universal rule that in all cases involving latent defects, the applicable statute of limitations cannot begin to run until the defects were or should have been discovered, the California court again emphasized the sophistication of the parties in the following way, to-wit:

> Instead, we believe that where parties are on equal footing and where there was considerable sophisticated give and take over the terms of the contact, those parties should be given the ability to enjoy the freedom of contract and to structure risk-shifting as they see fit without judicial intervention.

*Id.* at 1263. Finally, in distinguishing the facts of the *Moreno v. Sanchez* case (which was briefed in detail in Mahler's Sur-Reply), wherein the plaintiffs were unsophisticated in construction matters, Brisbane and Webcor "occupied positions of equal bargaining strength and both parties had the commercial and technical expertise to appreciate fully the ramifications of agreeing to a defined limitations period" and that conclusion "is reinforced by the fact that both parties had the participation and advice of legal counsel during contract negotiations." *Id.* at 1267.

16. The summary judgment evidence was conclusive that Jorden Mahler was not a sophisticated business owner who sought, by contract, to allocate business risks in advance. That is, rather than rely on the discovery rule, which prolongs the parties uncertainty whether or if a cause of action will lie, the parties to the contract seek to limit that period of uncertainty by mutual agreement to a different accrual date. This was Mahler's first experience in construction and it ended in litigation. Mahler also did not have the participation and advice of legal counsel during contract negotiations. Finally, this was a take or leave it contract and Mahler did not participate in drafting the terms and conditions of the contract. These facts alone take this case outside the parameters of the out-of-state cases cited by DMAC and should have very little persuasive weight on this Court's decision particularly in the light of Texas public policy.

17. Texas public policy does not support enforcing paragraph 13.7 of the Contract where there are facts of intentional non-disclosure of latent construction defects. The Texas Legislature itself has limited the scope and effect of the discovery rule, even where the parties have not waived it by contract. In enacting section 16.009 of the Texas Civil Practice and Remedies Code, the Legislature provided that damage "arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement," the claim must be brought no later than 10 years after the construction is substantially complete, regardless of whether the plaintiff

actually discovers the injury within the 10-year period. TEX. CIV. PRACT. & REM CODE §16.009 (Vernon's Supp. 2014). However, under section 16.009(e)(3), section 16.009(a) does not bar an action "based on willful misconduct or fraudulent concealment in connection with the performance of the construction or repair." *Id.* at §16.009(e)(3). Accordingly, Texas law recognizes the non-applicability of the statute of repose in construction cases where the contractor is guilty of willful or fraudulent conduct thereby potentially extending the accrual of the plaintiff's cause of action under the discovery rule to a date beyond 10 years after substantial completion.

18.     It is in situations where a party is not sophisticated or a licensed professional that the courts have indeed refused to enforce contractual language that had the effect of not only shortening the limitations period, but also waiving the discovery rule. See *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1424, 131 Cal. Rptr. 2d 684 (2003). In *Moreno*, a couple hired a home inspector to look at a home the couple was considering buying. *Moreno*, 106 Cal. App. 4th at 1419. Although California law provided for a four-year limitations period accruing from the date of inspection, the parties' preprinted home inspection contract set forth a shortened one-year limitations period running from the date of inspection. *Moreno*, 106 Cal.App.4th at 1420.

19.     After the buyers purchased the home, they became ill. *Moreno*, 106 Cal.App.4th at 1420. An environmental evaluation of the house revealed that the air ducts in the home were insulated with asbestos. *Id.* at 1421. In addition, an unsealed air return was discovered that permitted dust, dirt and rust to enter the heating system. *Id.* Fourteen months after the inspection, the buyers sued the home inspector for breach of contract, negligence, and negligent misrepresentation. *Id.* The trial court sustained the home inspector's motion to dismiss based on the one-year limitation of actions provision in the home inspection contract. *Id.* at 1422.

- 8 -

20.     The appellate court reversed the decision. *Moreno*, 106 Cal.App.4th at 1425. The court acknowledged the proposition that parties to a contract may stipulate therein for a limitation period shorter than fixed by the statute of limitations provided that the period fixed does not show imposition or undue advantage in some way. *Id.* at 1430. Nevertheless, the court concluded that in order for a contractual agreement establishing an accrual date for lawsuits against home inspectors to be enforceable, a homeowners cause of action against a home inspector cannot commence to run from the date of inspection, but instead, had to run from the date the homeowner discovers, or with the exercise of reasonable diligence should have discovered, the breach. *Id.* at 1428-29.

21.     The *Moreno* court based its ruling on the judicial concern toward protection of homeowners, and the fact that homeowners must rely on the greater expertise of home inspectors to discover latent defects in the home. *Moreno*, 106 Cal.App.4th at 1425. The court further reasoned that although the discovery rule originated in cases involving the acts of licensed professionals, the rule may also be applied to trades people who hold themselves out as having a special skill, or who are required by statute to possess a certain level of skill. *Id.* at 1424. Like Mahler here, the plaintiffs in *Moreno* were persons unsophisticated in construction matters. *Id.* That is why Mahler hired DMAC in the first place. Throughout the court's opinion in *Moreno*, it emphasized the importance of the relationship between the parties, where the home inspector was a professional in possession of special skills and knowledge upon whom the homeowners relied completely for counsel and advice. *Id.* Similarly, Mahler and DMAC occupied positions of unequal bargaining strength and only DMAC, as a professional contractor, had the commercial and technical expertise to appreciate fully the ramifications of agreeing to a defined accrual period. This conclusion is reinforced by the fact that Mahler did not have the participation and advice of legal counsel during contract negotiations. See *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md.App. 158

(Md.App.2000) (court observed that the standard form contract drafted by AIA enjoyed significant history and widespread use in the construction industry and was drafted by a staff of highly trained professionals).

22. In the cases cited by DMAC, the courts do not purport, by virtue of their respective holdings, to address the validity of contractual suit limitations in all cases. In those cases, there was no suggestion of duress, fraud, misrepresentation, or unequal bargaining power. See *College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.*, 132 Md.App. 158 (Md.App.2000) (parties may modify limitations result if there is no statute to the contrary, it is reasonable, and it is not subject to defenses such as fraud, duress, or misrepresentation); *Oriskany Central School District v. Edmund J. Booth Architects, A.I.A*, 615 N.Y.S2d 160, 206 A.D.2d 896 (1994) (waiver of discovery rule provisions will govern in the absence of duress, fraud or misrepresentation); *William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal.App.4th 1294, 1308-1309, 139 Cal.Rptr.3d 670 (2012) (following *Moreno*; in the case alleging intentional nondisclosure of construction defects by real estate broker). As prayed for in the instant case, the result can be different in those circumstances.

23. For example, in *William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal.App.4th 1294 (2012), the trial court's denial of the defendant's motion for summary judgment on the basis of a statutory period of limitations was affirmed on appeal. In doing so, however, the appellate court ruled that the plaintiff's breach of contract action was subject to the limitations period in a buyer-broker agreement, but that the discovery rule applied. *Id.* at 1306.

24. As in the instant case, in *Lyon*, the facts involved intentional nondisclosure of construction defects. *Lyon*, 204 Cal.App.4th at 1301-1302. The plaintiffs alleged that the sellers knew of the construction defects and problems but did not disclose them as part of the sale. *Id.* Instead, the sellers painted the house a dark brown color to conceal many of the problems. *Id.* While

the house was listed for sale, rain caused many of the painted-over defects to reappear. *Id.* The sellers purchased more dark brown paint and covered up the newly visible damage prior to inspection by the plaintiffs. *Id.* Defects in the paint and stucco of the house were visible when photos of the property were taken to list it for sale. *Id.* The real estate agent was present when the photographs were taken. *Id.*

25. In concluding that the discovery rule applied to the contractual two-year limitations period, the *Lyon* court cited to the *Moreno* case and reasoned as follows, to-wit:

[J]udicial decisions have declared the discovery rule applicable in situations where the plaintiff is unable to see or appreciate a breach has occurred. These sorts of situations typically involve underground trespass, negligently manufactured drugs, products liability, violations of the right of privacy, *latent defects in real property*, or *breaches of contract committed in secret* (citations omitted) . . . When a breach of contract is committed in secret, such as the intentional nondisclosure of a real estate broker regarding previously visible construction defect, the contractual limitations period is properly held subject to the discovery rule. A contractually shortened limitations period has never been recognized outside the context of *straightforward transactions* in which the triggering event for either a breach of contract of for the accrual of a right is *immediate and obvious*. Moreover, no decision upholding the validity of a contractually shortened limitation period has done so in the context of an action against a professional or skilled expert where breach of a duty is more difficult to detect. Instead, most reported decisions upholding shortened periods involve *straightforward* commercial contracts plus the *unambiguous* breaches or accrual of rights under those contracts (citation omitted) . . . The breach of contract alleged in this case arose out of *intentional concealment* of the house's defects by the Costas combined with Lyon & Associates' *silence* on the matter. This is an example of a breach of contract claim that was *inherently difficult to detect*. Although a typical breach of contract may involve an obvious accrual of a right of action upon express repudiation of a contractual duty or an overt failure to perform duties, the breach in this case was *nonobvious* . . . Lyon & Associates *may not reap the benefit of a shortened contractual limitations period when its own alleged malfeasance contributed to the delay in the discovery of the buyers' injury*. The facts alleged by the Henleys call for application of the discovery rule as in other instances of breaches which can be, and are, *committed in secret* and, moreover, where the *harm flowing from those breaches will not be reasonably discoverable* by plaintiffs until a future time.

- 11 -

*Lyon*, 204 Cal.App.4th at 1308-1311. Similarly, DMAC should not reap the benefit of a shortened accrual date through contractual elimination of the discovery rule when its own proven malfeasance caused the delay in the discovery of Mahler's injury. Moreover, DMAC cannot be permitted to avoid liability for its actions by intentionally creating the construction defect and thereafter deceitfully concealing the wrongdoing until limitations has run. The contractual waiver of the discovery rule should be disregarded.

26.     Here, the summary judgment evidence conclusively establishes that DMAC employees knew about the structurally defective porches and intentionally built them in that manner. See Mahler's Appendix of Evidence, Ex. A. According to Mahler's expert, DMAC's construction of the porches violated the law and was done unsafely. See Mahler's Appendix of Evidence, Ex. B. Accordingly, Mahler asserts the defense that enforcement of the waiver provision should be against Texas public policy under these circumstances. A contract with provisions that are against public policy cannot be enforced. *City of the Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 730 (Tex. App.---Fort Worth 2008, pet. dism'd) (contract violates public policy if it has tendency to injure public good). To be sure, DMAC, a licensed professional contractor, who intentionally constructed the porches defectively and intentionally failed to disclose that fact to Mahler, should not be allowed to rely on a contractual waiver of the discovery rule in a lawsuit about a latent construction defects that were not discovered until after the prescribed limitations period expired. Justice requires that this Court disregard it.

## V.     DMAC FAILED TO CONCLUSIVELY PROVE WHEN THE CAUSE OF ACTION ACCRUED.

27.     Summary judgment should have been denied because DMAC did not conclusively prove when Mahler's cause of action accrued. This is a latent construction defect case. On October

- 12 -

25, 2006 the project was substantially complete. DMAC did not establish by summary judgment evidence the date of issuance of the final Certificate of Payment and just claimed all payments were made by the end of January 2008. See DMAC Exhibit "A." Even if this Court were to apply paragraph 13.7.1 of the Contract, DMAC failed to conclusively prove when Mahler's cause of action accrued under that provision. In accordance with paragraph 13.7.1.3, the commencement of the statutory limitation period could be as late as the following, to-wit:

> After Final Certificate of Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act *or failure to act* by the Contractor *pursuant to any Warranty* provided under Paragraph 3.5, the date of any correction of the Work *or failure to correct the Work* by the Contractor under Paragraph 12.2, <u>or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner</u>, *whichever occurs last.*

*See* Appendix of Evidence, Ex. C-1. Mahler's accrual date could have been as late as December 2013, when Mahler corrected the defect with the porch roofs and gave notice to DMAC that it intended to replace the porch roofs and DMAC offered no corrective work and didn't appear during the demolition to take photographs of the work. See Affidavit of Mahler attached to Motion for Leave to File Late Summary Judgment Evidence.

28. Moreover, in accordance with **paragraph 3.7.4** of the parties' Contract, DMAC contractually stipulated to be responsible for defective work and to bear the cost of correction "[i]f the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations" without any notice to Mahler. It is undisputed that DMAC intentionally constructed the porch roofs defectively. *See* Mahler's Appendix of Evidence, Exhibit "A." Applying the applicable summary judgment standard of review, it can be reasonably inferred that DMAC intentionally constructed the porch roofs in violation of the law and the applicable construction

standard to perform the work in a good and workman like manner. DMAC's owner, Don A. McIntrye, indeed testified that the parties' contract required the work to be constructed in a good and workman like manner. *See* Mahler's Appendix of Evidence, Exhibit "D" at 34: 16-23. DMAC's failure to accept responsibility for the defective porches and the costs incurred in 2012 to correct the deficiencies would amount to a failure to perform an obligation or duty under paragraph 3.7.4 of the parties' Contract, which would have accrued at the latest under paragraph 13.7.1.3 of the Contract in the 2012 year when Mahler incurred the costs or in the 2013 year when DMAC ultimately refused to accept responsibility. *See* Affidavit of Jorden Mahler and Exhibits 1 and 2 attached to Plaintiff's Motion for Leave to File Later Summary Judgment Evidence filed August 14, 2014 and thereafter granted by the Court by signed Order dated August 26, 2014.

29.     DMAC also failed to conclusively establish that Mahler's causes of action accrued in August 2007 by virtue of the content of the Robinson report. The Robinson report states that the "sags and unevenness" observed at the surface of the roof and the ceiling or soffit area below that area "*may be* due to structure of insufficient stiffness" and recommends that DMAC investigate further to "determine the extent of reinforcement necessary" for the *ceiling structure* to prevent further problems. See Motion, Ex. A.3 (emphasis added). It is impossible for the Robinson report to have given notice of structural defects in the porches when it clearly states that latent construction defects in the roof is beyond the scope of the inspection and merely comments that the inspector observed "sags" and "unevenness" on the surface of the porch roofs and the ceilings below that area and only at one location. *Id.*

30.     Here, what is required to commence the running of the limitations period is discovery of the nature of injury and its general cause, not the exact cause in fact or even the extent of the injury. See *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992). Limitations begins

- 14 -

to run only after Mahler discovers the *nature* of its injury and its *general* cause and not after noticing *potential* signs of *potential* latent structural defects or the first signs of damage that Mahler was told was repaired and never confirmed to have actually been symptoms of defective structure until years later after DMAC's fraudulent concealment was revealed. *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992) (discovery of nature of injury commences running of limitations); *Tenowich v. Sterling Plumbing Co., Inc.*, 712 S.W.2d 188, 189-190 (Tex. App.---Houston [14th Dist.] 1986, no writ) (limitations doesn't commence to run on first signs of damage).

31.     The nature of Mahler's injury was the fact that the porch roofs were built in violation of the law because DMAC failed to hire a structural engineer to design how to construct the porch roofs and the porch roof were ultimately built in a structurally defective manner and the defects were not visible. Section 1001.056 of the Texas Engineering Practice Act requires that a structural engineer be retained in connection with the construction of any building exceeding 5,000 square feet. A copy of the statute is attached hereto and incorporated by reference. DMAC did not retain an structural engineer. See Mahler Appendix of Evidence, Exhibit "A." DMAC representatives Don McIntrye and Bob Cooper instructed Barry Tarver on how to require the subcontractor, Joe De Larosa, was to build the porch roofs and Tarver did not approve of the method and knew that the porch roofs were being built defectively and suspected that Mahler would have problems with them in the future. *Id.* Tarver confirmed that porch roofs were structurally defective and that the defects were not visible for that reason. *Id.*

32.     Even DMAC's owner, Don A. McIntyre, didn't believe it was necessary to hire a structural engineer to inspect the porch roofs in 2007 or to make any structural repairs to the porches. See Response, Ex. D: 37: 3-9 (**Q.** So you never even considered whether or not your company should hire a structural engineer to inspect the porch roofs back in 2007? **A.** No. **Q.** Do you think

it was an obligation for them to remove the soffit and go beyond that into the -- deeper into the structure of the roof and investigate potential defects. **A.** No.). McIntyre indeed agreed that DMAC should perform the inspection and make the repairs.

> **Q.** If there were loose ends or defects, aren't you, as the builder, in a better position to make those repairs and discoveries than your customer?
>
> **A.** And we did that.
>
> **Q.** My question is: Aren't you in a better position?
>
> **A.** Yes.

See Response, Ex. D: 63: 22-25; 64: 1-2. Indeed, DMAC's owner acknowledged the porches were not engineered. See Response, Ex. D (**Q.** Are you aware of any drawing that was created for the porch roofs? **A.** No, I am not). As recent as July 16, 2014, DMAC's owner, Don A. McIntyre, testified that DMAC "fixed" the problems with the porch roofs. See Response, Ex. D: 40:8-12 (**Q.** Well, what did you about it when you heard something about it in 2007? **A.** Fixed it.).

33. DMAC should not be allowed to intentionally construct the porch roofs defectively, intentionally cover the defects up concealing the defects for years and thereafter rely on an accrual provision in a contract with an unsophisticated party, Mahler, which was not negotiated and whom did not have the benefit of legal counsel. Second, Texas public policy does not support abrogating the applicability of the discovery rule, even under the 10-year statute of repose, where there is willful and fraudulent conduct of concealment in the construction. Finally, DMAC agreed under section 3.7.4 of the Contract to be responsible for defective work and to bear the cost of correction "[i]f the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations" without any notice to Mahler. As a result, DMAC's refusal to bear the costs of correction in 2012 is an act in violation of its contractual duty and obligation under the

section 3.7.4 of the contract and, at the latest, Mahler's cause of action for breach of contract accrued in 2012 under section 13.7.1.3 of the Contract.

## PRAYER

For these reasons, Mahler requests that the Court deny DMAC's Amended Motion for Traditional Summary Judgment and grant a new trial.

Respectfully submitted,

**LAW OFFICES OF JEFFREY J. TOMPKINS**

JEFFREY J. TOMPKINS
TSB 20125500
1413 Biltmore Road, Suite 103
Houston, Texas 77043-4005
Telephone: 713-787-5333
Facsimile: 713-787-5334
OF COUNSEL:
CHRISTOPHER D. NUNNALLEE
TSB 24025568
1413 Brittmoore Road, Suite 103
Houston, Texas 77043-4005
Telephone: 713-787-5333
Facsimile: 713-787-5334

**ATTORNEYS FOR PLAINTIFF**

- 17 -

## CERTIFICATE OF SERVICE

This is to certify that on November 16, 2014, a true and correct copy of PLAINTIFF'S MOTION FOR NEW TRIAL was served by certified mail, return receipt requested or by facsimile transmission sent before 5:00 p.m. or both in accordance with Tex. R. Civ. P. 21a, addressed to the following:

James A. Schuelke                                   *FACSIMILE TO 713.485.7250*
REYNOLDS FRIZZEL LLP
1100 Louisiana Street, Suite 3500
Houston, Texas 77002

CHRISTOPHER D. NUNNALLEE

```
JURN7 (NSA#)     JUSTICE INFORMATION MANAGEMENT SYSTEM      JAN 16, 2015(C1)
INT6510                   CIVIL CASE INTAKE               OPT: _____  -  INT
                        GENERAL PARTY INQUIRY             PAGE:   1 -    1

CASE NUM: 201264035__ PJN> __  TRANS NUM: _____ CURRENT COURT: 152 PUB? _
CASE TYPE: BREACH OF CONTRACT            CASE STATUS: DISPOSED (FINAL)
STYLE: B MAHLER INTERESTS L P            VS DMAC CONSTRUCTION INC
============================================================================
                    **** INACTIVE PARTIES ****
  PJN  PER/CONN COC  BAR        PERSON NAME           PTY    ASSOC. ATTY
  NUM   NUMBER                                        STAT
_     00002-0002 XPL 24075037 DMAC CONSTRUCTION INC          SCHUELKE, JAM
_     00001-0002 XDF 24025568 B MAHLER INTERESTS L P         NUNNALLEE, CH
_     00003-0001 AGT          DMAC CONSTRUCTION INC (CORPORA
_     00002-0001 DEF 24012292 DMAC CONSTRUCTION INC          BLACK, JOHN S
_     00002-0001 PAD 04969600 CRADDOCK, DANIEL K.
_     00001-0001 PLT 20125500 B MAHLER INTERESTS L P         TOMPKINS, JEF


==> (6) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```